UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

  - against –

JOSEPH CATAPANO and MICHAEL PIERVINANZI,

      Defendants,

----------------------------------------X

**ORDER GRANTING PLAINTIFF'S MOTION FOR FINAL JUDGMENT AGAINST DEFENDANTS**

11-cv-1476 (KAM)(RER)

**MATSUMOTO, United States District Judge:**

Pending before the court is plaintiff Securities and Exchange Commission's ("SEC" or "plaintiff") motion for final judgment ordering disgorgement plus prejudgment interest and civil penalties against defendants Joseph Catapano and Michael Piervinanzi (together, "defendants"). (*See* ECF No. 15.) For the reasons set forth herein, plaintiff's motion is granted in part and denied in part.

## BACKGROUND

### I. Facts

The facts below, which defendants do not dispute for purposes of this motion, are taken from the complaint. (*See* ECF No. 6, Judgment as to Joseph Catapano, at 4; ECF No. 8, Judgment as to Michael Piervinanzi, at 4.) In February 2011, defendants entered into an agreement with an undercover government agent (the "Broker"), who they believed to be a broker representing a

group of Registered Representatives (the "RRs") of securities brokerage firms with discretion over the trading accounts of the RRs' wealthy clients. (Compl. ¶¶ 1-2, 14-15.) Defendants agreed to pay the Broker a 30% kickback in return for the RRs' purchase of up to $3 million in the stock of Euro Solar[1] on behalf of their clients. (*Id.* ¶¶ 15, 17.) Euro Solar common stock qualified as a penny stock under the Exchange Act. (*Id.* ¶ 13.) Defendants told the Broker that Mr. Catapano would use online accounts to make the sales, and that the kickback payments would be made from an offshore account in South Africa. (*Id.* ¶¶ 16, 18.)

During a meeting with the Broker on February 9, 2011, Mr. Catapano told the Broker that he intended the RRs to hold the Euro Solar sales for several months while he manipulated the stock price. (*Id.* ¶ 17.) He advised the Broker that he would match the trades at preset prices and perform a series of test trades to ensure that the matched trades and kickback payments would work as planned. (*Id.* ¶ 18.) On February 11, 2011, Mr. Catapano agreed to trade $3 million of Euro Solar stock over the course of 60 days, beginning with three test trades of approximately $10,000 each. (*Id.* ¶ 19.)

---

[1] Euro Solar is a corporation with its principal office in Ho-Ho-Kus, New Jersey that, in 2011, purported to engage in the acquisition of prospective sites for the construction of solar power facilities in Bulgaria. (*Id.* ¶¶ 11-13.)

2

The first such trade took place on February 16, 2011. (*Id.* ¶ 20.) Mr. Catapano sold 45,000 shares of Euro Solar stock to accounts associated with the Broker at $0.22 per share. (*Id.*) In the second test trade on February 17, 2011, Mr. Catapano sold 35,000 shares of Euro Solar stock at $0.24 per share to accounts associated with the Broker. (*Id.* ¶ 21.) On February 18, 2011, Mr. Catapano sold 50,000 shares at $0.26 per share to the associated accounts. (*Id.*) For each of the three test trades, Mr. Catapano and the Broker had previously agreed upon the number of shares and price per share, and Mr. Catapano provided the Broker with instructions regarding the size, price, and timing of the orders to ensure that the buy and sell orders would match. (*Id.* ¶¶ 21-22.)

On February 17, 2011, Mr. Catapano asked the Broker for instructions to wire the kickback payment to the Broker's bank account. (*Id.* ¶ 24.) Mr. Piervinanzi later deposited $8,800 into the Broker's bank account. (*Id.* ¶ 25.)

II. **Procedural History**

Plaintiff commenced this action on March 25, 2011, alleging violations of Section 17(a) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77q(a), Section 9(a)(1) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78i(a)(1), and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 promulgated thereunder, 17 C.F.R.

3

§ 240.10b-5. (*See generally* ECF No. 1, Complaint.) Plaintiff filed a motion for approval of a consent judgment as to Mr. Catapano on July 5, 2011 (ECF No. 2), which was entered on July 11, 2011 (ECF No. 6.) Plaintiff filed a motion for approval of a substantively-identical consent judgment as to Mr. Piervinanzi on July 12, 2011 (ECF No. 7), which was entered on July 20, 2011 (ECF No. 8). The judgments provided that defendants were permanently enjoined from future violations of Section 17(a) of the Securities Act, Sections 9(a)(1) and 10(b) of the Exchange Act, and Rule 10b-5, and were permanently barred from participating in any penny stock offerings.[2] (*See* ECF Nos. 6, 8.)

On December 20, 2012, the court held a telephone conference regarding plaintiff's proposed motion for final judgment against defendants, at which time the court ordered that the fully-briefed motion be filed on ECF on February 15, 2013. (Minute Entry dated 12/21/12; *see also* ECF No. 9, Plaintiff's Pre-Motion Conference Letter dated 11/27/12.) On

---

[2] In a prior, unrelated action, in a final judgment by default, Mr. Catapano was enjoined from future violations of Sections 5 and 17(a) of the Securities Act, Sections 10(b) and 15(a) of the Exchange Act, and Rule 10b-5, barred from participating in penny stock offerings, and ordered to pay $4,733,909 in disgorgement and a $110,000 civil penalty. (*See SEC v. Opsis Technologies Int'l, Inc et al.*, No. 03-cv-62251, ECF No. 56, Final Judgment by Default dated 3/1/05 (S.D. Fla.).) According to plaintiff, Mr. Catapano has yet to make any payments towards the judgment. Mr. Piervinanzi was previously convicted of conspiracy, attempted bank fraud, and attempted money laundering, for which he served over 14 years in custody. *See U.S. v. Piervinanzi*, 23 F.3d 670, (2d Cir. 1994) (vacating Mr. Piervinanzi's conviction as to a count of money laundering under 18 U.S.C. § 1957).

4

February 15, 2013, plaintiff filed its motion for final judgment ordering disgorgement plus prejudgment interest and civil penalties against defendants, but no opposition papers were filed by either defendant. (ECF No. 15, Plaintiff's Memorandum in Support of Motion for Final Judgment ("Pl. Mem."); *see generally* Docket No. 11-cv-1476.) The court ordered defendants to explain their respective failures to abide by the court-ordered briefing schedule by February 20, 2013. (Electronic Order dated 2/19/13.) Mr. Piervinanzi requested an extension, due to oversight of his counsel, and filed his opposition on February 20, 2013. (*See* ECF No. 18, Letter from Sam Braverman, Esq. dated 2/19/13; ECF No. 19, Mr. Piervinanzi's Opposition to [Plaintiff's] Motion for Final Judgment filed 2/20/13 ("Piervinanzi Opp.").) Mr. Catapano, through his counsel, indicated that he did not oppose plaintiff's motion. (ECF No. 22, Letter from Guy Oksenhendler, Esq. dated 2/20/12.) Plaintiff filed its reply to Mr. Piervinanzi's opposition on March 15, 2013. (ECF No. 22-3 ("Pl. Reply").)

On March 18, 2013, counsel for Mr. Piervinanzi filed a letter to correct a factual matter in Mr. Piervinanzi's opposition and to request that the motion for final judgment be stayed pending Mr. Piervinanzi's sentencing in the related criminal case. (ECF No. 23, Letter from Sam Braverman, Esq.) The court stayed the case on January 23, 2014. (Electronic

Order dated 1/23/14.) Mr. Piervinanzi was sentenced on December 12, 2014, to nine months in custody, three years of supervised release, the first six months to be served in home confinement, and $33,575 in forfeiture.[3] (*See United States v. Piervinanzi*, Docket No. 13-cr-167, ECF No. 19, Judgment as to Michael Piervinanzi.)

## **DISCUSSION**

I. **Disgorgement and Prejudgment Interest**

Plaintiff seeks disgorgement of defendants' profits from their fraudulent scheme and prejudgment interest, which neither defendant opposes. "In cases involving securities law violations, a 'district court has broad equitable power to fashion appropriate remedies, including ordering that culpable defendants disgorge their profits.'" *SEC v. One Wall St., Inc.*, 06-cv-4217, 2008 WL 5082294, at *5 (E.D.N.Y. Nov. 26, 2008) (quoting *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1474 (2d Cir. 1996). The disgorgement is based on a reasonable approximation of the profit realized by the defendant; any risk of uncertainty in the calculation is borne by "the wrongdoer whose illegal conduct created the uncertainty." *One Wall Street*, 2008 WL 5082294, at *5).

---

[3] Mr. Catapano had been sentenced to 37 months imprisonment with credit for time served, three years supervised release, and $33,575 in forfeiture. (*See United States v. Catapano*, Docket No. 12-cr-719, Minute Entry dated 7/30/15.)

6

A plaintiff bears the burden to show that the disgorgement figure "approximates the amount of unjust enrichment . . . ." *Id.* To meet its burden, the plaintiff must submit affidavits or documentary evidence supporting its approximation. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (finding the district court's perfunctory acceptance of plaintiff's unsupported claim for disgorgement unsatisfactory and an evidentiary hearing necessary); *SEC v. World Info. Tech., Inc.*, 590 F. Supp. 2d 574, 577 (S.D.N.Y. 2008) (finding account statements and other evidence admitted during trial sufficient to support the disgorgement approximation).

Plaintiff seeks disgorgement of $31,000, an approximation of the amount of defendants' ill-gotten gains from the three-day trading scheme. (Mem. at 6-8.) At the court's direction, plaintiff provided documentation of the disgorgement amount of $31,300, which was derived from trade records of ESLP securities. (*See* ECF No. 28, Declaration of James K. Hanson dated 7/24/15 ("7/24/15 Hanson Decl.").) Furthermore, plaintiff has calculated prejudgment interest as $310 using the Internal Revenue Service tax underpayment rate for the period of April 1, 2011 through June 30, 2011. (*See* ECF No. 29, Declaration of James K. Hanson dated 10/21/15, Ex. 1, Prejudgment Interest Report.) Plaintiff has demonstrated that the disgorgement

7

amount approximates the amount of defendants' unjust enrichment and is reasonable, and neither defendant challenges plaintiff's calculation of the disgorgement amount or prejudgment interest. The court finds that plaintiff's calculations of the disgorgement amount and prejudgment interest are correct, and orders defendants to pay $31,000 in disgorgement and $310 in prejudgment interest.[4] The defendants are jointly and severally liable for the disgorgement amount and prejudgment interest.

## II. Civil Penalties

The Exchange Act provides for the imposition of civil monetary penalties for violations of the securities laws in order to "encourag[e] investor confidence, increas[e] the efficiency of financial markets, and promot[e] the stability of the securities industry." *SEC v. Palmisano*, 135 F.3d 860, 866 (2d Cir. 1998), *cert. denied*, 525 U.S. 1023 (1998); 15 U.S.C. §§ 77t(d), 78u(d)(3). The court determines the amount of the civil penalty based on the facts and circumstances of the case, including "(1) the egregiousness of the conduct at issue; (2) the degree of scienter; (3) the losses or risk of losses created by the conduct; (4) the isolated nature or frequency of the

---

[4] Defendants' disgorgement liability will be deemed fully satisfied by their compliance with the forfeiture orders (*see United States v. Catapano*, Docket No. 12-cr-719, ECF No. 21-1; *United States v. Piervinanzi*, Docket No. 13-cr-167, ECF No. 19-1) entered in their respective criminal cases. To date, there is no evidence that either defendant has made any forfeiture payment. (*See* 7/24/15 Hanson Decl. ¶ 11.)

8

conduct, if repeated; and (5) defendant's demonstrated current and future financial condition and present ability to pay." *S.E.C. v. Balboa*, No. 11 CIV. 8731, 2015 WL 4092328, at *5 (S.D.N.Y. July 6, 2015) (citing *S.E.C. v. Wyly*, 56 F. Supp. 3d 394, 407 (S.D.N.Y. 2014)). The court may also consider other remedies already imposed to determine whether a penalty is "unduly harsh under the circumstances." *Wyly*, 56 F. Supp. 3d at 433–34.

The Exchange Act describes three tiers of penalties that increase in severity based on the nature of the underlying conduct. First tier penalties may be imposed for any violation of the underlying statute or rules or regulations promulgated thereunder, and the court may authorize a fine of up to $7,500 for each violation. *Id.*; *see also* 17 C.F.R. Ch. II, Pt. 201, Subpt. E, Table IV.[5] Second tier penalties may be imposed if the violation "involved fraud, deceit, manipulation, or deliberate and reckless disregard of a regulatory requirement;" the maximum statutory penalty for the second tier is $75,000. *Id.* The most severe category, third tier penalties, are applicable where the violation conduct featured "fraud, deceit, manipulation, or deliberate and reckless disregard of a regulatory requirement"

---

[5] Subpart E of Part 201 of Chapter 17 of the Code of Federal Regulations provides adjustments for inflation to the maximum amounts of all civil monetary penalties set forth in the Securities Act and the Exchange Act. Table IV applies to violations occurring between March 4, 2009 and March 5, 2013.

9

and caused, or created a significant risk of, substantial losses to others. 15 U.S.C. §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii). If a court finds that a third tier penalty is appropriate, it may authorize fines in the amount of up to $150,000 for each violation. *Id.*

Plaintiff seeks the imposition of third tier penalties for defendants' violations due to the prolonged nature of defendants' fraud, the $3,000,000 intended scope of the fraud, and both defendants' prior histories with Securities Act fraud and/or financial fraud. (Pl. Mem. at 8-9; Pl. Reply at 2-8.) Mr. Piervinanzi opposes the imposition of third tier penalties, arguing that a first or second tier penalty is more appropriate given the circumstances of the instant offense and the fact that Mr. Piervinanzi's conduct caused a loss of only $31,000. (Piervinanzi Opp. at 2-3.) In his most recent submission, Mr. Piervinanzi asks that this court consider the balance of his criminal sentence, "medical conditions, his limited future ability to earn a living, and his limited financial resources" in determining the penalty. (ECF No. 26, Letter from Sam Braverman, Esq. dated 12/19/14.) As stated above, Mr. Catapano does not oppose plaintiff's motion for third tier penalties.

Although the court agrees with plaintiff that defendants' actions involved fraud, deceit, and manipulation, defendants did not cause or create significant risk of

10

substantial losses to others because, despite their intentions to engage in $3 million of fraudulent stock sales, their fraudulent scheme was halted after the completion of the three test trades.  Consideration of the intended magnitude of the fraud would overstate the egregiousness of the violations actually committed by defendants in this case.  Thus, the court finds that third tier penalties are inappropriate in this case.  Because defendants' actions involved fraud, deceit, and/or manipulation, second tier penalties of up to $75,000 would be better suited to addressing the violative conduct in this case.

The court finds, however, that application of the above-referenced discretionary factors weighs against imposing the maximum second tier penalty on each defendant.[6]  The court notes that, although the instant fraud was serious, it was limited in duration (three "test" transactions over the course of three days) and magnitude (a total of $31,000 for the three transactions), and that both defendants have been sentenced to terms of imprisonment and forfeiture of $33,575 in their related criminal cases in the Eastern District of New York, *United*

---

[6] As an initial matter, neither plaintiff nor defendants have submitted information in connection with the instant motion regarding the particulars of defendants' roles in the fraudulent scheme or defendants' present or future financial conditions.  Furthermore, plaintiff has not identified the amount in civil penalties sought against defendants.  Nonetheless, the court has previously considered each defendant's circumstances and role in the instant offense in connection with their respective criminal cases.

*States v. Joseph Catapano*, 12-cr-719-KAM (E.D.N.Y.) and *United States v. Michael Piervinazi*, 13-cr-167-KAM (E.D.N.Y.).

As to Mr. Catapano, his conduct involved the sale of penny stocks, which constitutes a violation of the prior 2005 permanent injunction entered by Southern District of Florida. Moreover, according to plaintiff, Mr. Catapano has failed to pay any of the disgorgement or civil penalty imposed by the Southern District of Florida in *SEC v. Opsis Technologies International, Inc.*, 03-cv-62251 (S.D. Fla.). Mr. Catapano has not opposed plaintiff's motion or provided the court with any information concerning his financial circumstances. The court finds that a modest reduction of the maximum penalty is warranted in light of the disgorgement ordered herein, and Mr. Catapano's sentence of 37 months imprisonment[7] and $33,575 in forfeiture in the related criminal matter, *United States v. Joseph Catapano*, 12-cr-719. Accordingly, the court will impose a second tier penalty of $44,000, equivalent to the maximum second tier penalty of $75,000 less the disgorgement amount of $31,000.

In opposing a third tier civil penalty, Mr. Piervinanzi cites his relatively minor role in the fraudulent scheme. This is Mr. Piervinanzi's first violation of the

---

[7] According to the Federal Bureau of Prisons online inmate locator, Mr. Catapano was released from custody on August 4, 2015. Federal Bureau of Prisons, Inmate Locator, http://www.bop.gov/inmateloc/ (last visited October 20, 2015).

12

securities laws, although he has previously been convicted of conspiracy, attempted bank fraud, and attempted money laundering and served fourteen years in prison. *See United States v. Piervinanzi*, 89-cr-229 (S.D.N.Y.). Mr. Piervinanzi has demonstrated in his related Eastern District of New York criminal case, *United States v. Piervinanzi*, 13-cr-167, (1) that he did not make a significant profit from his offense, receiving less than two thousand dollars for his participation, (2) that he is unlikely to become able to pay a significant civil penalty due to his pre-incarceration financial condition and present incarceration, and (3) that he suffers from serious long-term health conditions that will necessitate continued treatment. Accordingly, for the reasons stated above, and in light of Mr. Piervinanzi's forfeiture and disgorgement obligations, the court imposes an additional second tier monetary penalty on Mr. Piervinanzi in the amount of $10,425.

## **CONCLUSION**

For the reasons set forth above, the court grants in part and denies in part plaintiff's motion for final judgment as follows: (1) Plaintiff's motion for disgorgement and prejudgment interest against defendants jointly and severally is granted in the amount of $31,000 for disgorgement, plus prejudgment interest in the amount of $310. (2) Plaintiff's motion for third tier civil penalties is denied. A second tier penalty of

$44,000 is imposed as to Mr. Catapano.  The court imposes a civil penalty on Mr. Piervinanzi in the amount of $10,425.  The Clerk of Court is directed to enter judgment.

**SO ORDERED.**

Dated: Brooklyn, New York
       October 23, 2015

/s/
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York